UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IN RE:
                                                            DECISION AND ORDER

       BERNICE CURRY-MALCOLM                    20-CR-6537L

_____


       Once again this Court confronts a proposed Complaint by Bernice Curry-Malcolm ("plaintiff"). In a prior Decision concerning plaintiff's previous lawsuits against the Rochester City School District (the "District") and related employees, I described plaintiff as a "demonstrable, abusive litigant." *Malcolm v. Ass'n of Supervisors & Adm'rs of Rochester* ("*Malcolm I*"), 17-CV-6878; 388 F. Supp. 3d 242, 242 (W.D.N.Y. 2019). This Court further noted that plaintiff has created a "cottage industry of litigation" against school districts that have hired her. *Id.*, 388 F. Supp. 3d 242 at 248.

       Plaintiff was initially employed by the District from 2015 through the end of the 2016-17 school year. (Proposed Complaint, Dkt. #1-4 at ¶19). She has previously brought at least three lawsuits against various District entities and employees arising out of that period of employment, alleging discrimination in violation of state and federal anti-discrimination statutes, as well as miscellaneous claims sounding in contract. All of these actions have been dismissed. *See Malcolm I*, 17-CV-6878 (complaint dismissed and filing injunction issued); *Malcolm v. Rochester City Sch. Dist. et al.*, ("*Malcolm II*"), 17-CV-6873 (complaint dismissed); *Curry-Malcolm v. Rochester City Sch. Dist. et al.*, ("*Malcolm III*"), 18-CV-6450 (complaint dismissed).

       After identifying "a pattern of frivolous and baseless litigation" by plaintiff against the District and related parties, the Court in *Malcolm I* permanently enjoined plaintiff from

commencing further *pro se* actions arising out of her employment against the District, its employees, and/or the Association of Supervisors and Administrators of Rochester, without first obtaining leave of court. *Malcolm I*, 388 F. Supp. 3d 242 at 256-57 (W.D.N.Y. 2019).

Regrettably, this was not the first occasion in which the Court found it necessary to impose sanctions against plaintiff. Prior to plaintiff's employment with the District, she was employed by the Honeoye Falls-Lima Central School District and repeatedly pursued baseless, frivolous litigation against that district as well. On September 14, 2010, this Court issued identical sanctions related to plaintiff's flurry of duplicative federal and state litigation against the Honeoye Falls-Lima Central School District. *See Malcolm v. Bd. of Educ. of Honeoye Falls-Lima Central Sch. Dist.*, 737 F. Supp. 2d 117 (W.D.N.Y. 2010), *aff'd*, 506 Fed. Appx. 65 (2d Cir. 2012).

Plaintiff now moves (Dkt. #1), *pro se*, for leave of court to commence yet another action against the District and its Board of Education, and has submitted a proposed Complaint (Dkt. #2). With the plaintiff's lengthy history of abusive, frivolous and duplicative litigation as background, the Court has reviewed plaintiff's submissions and the proposed Complaint.

Under the appropriate legal standard, I find that, once again, plaintiff has failed to state claims upon which relief may be granted, and therefore her motion for leave to file a new action is in all respects denied.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the proposed Complaint, plaintiff properly exhausted her administrative remedies, dually filing administrative charges with the New York State Division of Human Rights ("NYSDHR") and/or Equal Employment Opportunity Commission on or about March 16, 2017 and March 30, 2017. Plaintiff's administrative charges primarily alleged that: (1) the District had wrongfully refused to sufficiently investigate internal complaints of discrimination lodged by

plaintiff; and (2) the District eliminated plaintiff's Case Administrator of Special Education ("CASE") position in retaliation for her internal discrimination complaints. These charges, representing two out of five administrative charges made by plaintiff relative to her District employment, were still unresolved at the time the Court issued its decisions in *Malcolm I, Malcolm II*, and *Malcolm III*.

The NYSDHR found probable cause and recommended the matter for a public hearing. After the hearing, an Administrative Law Judge ("ALJ") issued a Recommended Decision finding that the evidence and testimony concerning the charges did not support plaintiff's claims of discrimination or retaliation, and recommending their dismissal. The EEOC adopted those findings, dismissed the charges, and issued plaintiff a Right to Sue letter on December 4, 2019, which plaintiff alleges she received on December 7, 2019. (Dkt. #1-4 at ¶¶15-16). Plaintiff filed the instant motion for leave on or about March 3, 2020, within the applicable 90-day period for commencing an action.

The proposed Complaint alleges that beginning in 2015, plaintiff was employed by the District as a full-time CASE. The District's elimination of twenty-two CASE employees, including plaintiff, was the focus of the three prior actions commenced by plaintiff against the District. *See Malcolm I*, 388 F. Supp. 3d 242. Plaintiff claims that she was thereafter subjected to a discriminatory hostile work environment, harassment, and retaliation by the defendants, culminating in the retaliatory termination of her employment on or about July 1, 2017. She seeks leave of court to commence an action setting forth the following claims: (1) unlawful discrimination based on race, color, age and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-2 et seq.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 et seq.; and New York Human Rights Law; (2) wrongful termination

in violation of N.Y. Educ. Law 3020A; (3) denial of equal protection in violation of the United States Constitution and the New York State Constitution; and (4) breach of contract.

In assessing whether plaintiff's motion for leave to file the proposed Complaint (Dkt. #1) should be granted, the Court considers whether the proposed Complaint (Dkt. #1-4), viewed in the light most favorable to plaintiff and construing all inferences in her favor, states any claims upon which relief may be granted.

## DISCUSSION

**I.     First, Fourth and Sixth Causes of Action: Discrimination in Violation of Title VII and the Equal Protection Clauses of the United States and New York State Constitutions[1]**

### A.  Race-Based Discrimination

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). Stating a claim of discrimination in violation

---

[1] Plaintiff's Title VII claims (First Cause of Action) are duplicative of her Equal Protection claims under the New York and United States Constitutions (Fourth and Sixth Causes of Action). It is well settled in this Circuit that "the analytical framework of a workplace equal protection claim parallels that of a discrimination claim under Title VII." *Cunningham v. N.Y. State DOL*, 326 Fed. App. 617, 620 (2d Cir. 2009) (unpublished opinion). Thus where, as here, they are asserted together, "the two must stand or fall together." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004). *See also Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 53 n.3 (2d Cir. 2007) ("the Equal Protection Clauses of the federal and New York Constitutions are coextensive"); *Weber v. City of New York* 973 F. Supp. 2d 227, 274 (E.D.N.Y. 2013)(same).

The Court observes that in setting forth the basis for her New York Constitutional claim, plaintiff includes an allegation that the defendants engaged in a "pattern and practice of discrimination, harassment and retaliation" in violation of Title VII . . ." (Dkt. #1-1 at ¶256). To state a claim for "pattern and practice" discrimination, a plaintiff must plausibly allege that her employer engaged in widespread acts of intentional discrimination against a class of individuals, rather than isolated incidents against a single person. Plaintiff's proposed Complaint contains no such allegations, and the Court presumes that the plaintiff's use of "pattern and practice" language in the proposed Complaint was coincidental. To the extent the plaintiff intended to state such a claim, however, the proposed Complaint contains no allegations suggesting that intentional discrimination was the defendant's "standard operating procedure" and affected a class of employees, rather than plaintiff alone. *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 158 (2d Cir. 2001)(quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 (1977)). As such, the proposed Complaint fails to state a plausible claim concerning a "pattern and practice" of unlawful discriminatory conduct.

of Title VII thus requires the plaintiff to allege two elements: "(1) [that] the employer took adverse employment action against [the plaintiff]; and (2) [that plaintiff's] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)(emphasizing that at the pleadings stage of an employment discrimination case, a plaintiff has the "minimal burden" of alleging facts "suggesting an inference of discriminatory motivation")(quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

An adverse employment action occurs when an employee "endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d 72 at 85 (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). An adverse employment action is "more disruptive than a mere inconvenience or an alteration of job responsibilities," *Galabya*, 202 F.3d 636 at 640, and includes (but is not limited to) such acts as discharge or demotion, denial of a promotion, addition of responsibilities, involuntary transfer to an inferior position, and denial of benefits. *See Little v. NBC*, 210 F. Supp. 2d 330, 377 (S.D.N.Y. 2002).

Plaintiff alleges that she suffered from the following adverse employment actions: (1) the District, allegedly in violation of its own policies, failed to adequately investigate her December 26, 2016 internal complaint of race-based harassment against her supervisor, Teresa Root ("Root"), as well as a subsequent March 3, 2017 internal discrimination complaint; and (2) Root authored an unfavorable performance evaluation in or around spring 2016, rating plaintiff's performance as "developing." (Dkt. #1-4 at ¶175).

With respect to plaintiff's claim that the District failed to adequately investigate her internal complaints of discrimination, courts in this Circuit have consistently concluded that an employer's failure to investigate a plaintiff's complaint of discrimination does not constitute an adverse

employment action for purposes of a disparate treatment claim. *See Bianchi v. Rochester City Sch. Dist.*, 2019 U.S. Dist. LEXIS 168991 at *23 (W.D.N.Y. 2019) ("a number of Courts in this Circuit have held that an employer's failure to investigate an employee's complaint does not amount to an adverse employment action"); *Day v. City of New York*, 2015 U.S. Dist. LEXIS 161206 at *24 (S.D.N.Y. 2015)(collecting cases, and finding that an allegation that the employer failed to follow its own internal policies when it failed to investigate plaintiff's discrimination complaint did not allege an adverse employment action).

I find no basis to disturb this precedent, particularly given that plaintiff makes no claim that the District's allegedly insufficient investigations altered the terms and conditions of her employment in any way. I therefore conclude that plaintiff's contention that the District failed to properly investigate her internal discrimination complaints does not plausibly allege an adverse employment action.

With respect to plaintiff's allegation that Root's assignment of a "developing" rating in her spring 2016 performance evaluation was adverse, it is well settled that "a negative performance review, without any showing of a negative ramification, cannot constitute an adverse employment action." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019). Although plaintiff alleged in her administrative charge that a rating of "developing" was a "barrier to tenure," plaintiff has not alleged that she was eligible for tenure but was denied it because of the "developing" rating, that she was counseled or disciplined because of the evaluation, or that it otherwise altered her compensation, benefits, job title, or any other terms and conditions of her employment. As such, plaintiff has failed to plausibly state that the performance evaluation was an adverse employment action.

The proposed Complaint thus fails to state a claim for disparate treatment under Title VII.

### B. Hostile Work Environment

"An employer violates Title VII when the 'workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . so long as there is a basis for imputing the conduct that created the hostile environment to the employer.'" *Rasmy v. Marriott Int'l Inc.*, 952 F.3d 379, 387 (2d Cir. 2020) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010)).

"To plead a hostile work environment claim, a plaintiff must plead facts that describe conduct which: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic." *Maines v. Last Chance Funding, Inc.*, 2018 U.S. Dist. LEXIS 162073 at *26 (E.D.N.Y. 2018)(quoting *Placide-Eugene v. Visiting Nurse Serv. of New York*, 2013 U.S. Dist. LEXIS 76240 at *34 (E.D.N.Y. 2013)). Furthermore, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citations and internal quotation marks omitted).

Here, plaintiff claims in conclusory fashion that she was subjected to ongoing race-based harassment by Root, and by coworker Kariann Kittelberger ("Kittelberger").[2] While plaintiff

---

[2] Plaintiff's complaint also makes reference to Kittelberger, a Caucasian CASE who was allegedly younger than plaintiff, having been promoted on or about February 17, 2017 to the position of Acting (or Interim) Director of NorthSTAR, a District-run mental health education program. Plaintiff avers that a month later, on March 16, 2017, the Board of Education voted to make Kittelberger the Director of NorthSTAR. Plaintiff claims that: "[p]laintiff should have been given the opportunity to serve as the Acting Director [and Director] of NorthSTAR." (Dkt. #1-1 at ¶196, ¶218; Dkt. #1-1 Exhibits, March 30, 2017 NYSDHR charge, at ¶12). Plaintiff's March 30, 2017 NYSDHR charge adds that at some point prior to Kittelberger's promotion to Director, plaintiff "made the District aware that [plaintiff]

contends that Root subjected her to "relentless . . . pursuit" and that Kittelberger had a "vendetta" against her, she makes no allegations concerning any specific comments or offensive conduct by Root, and as to Kittelberger, alleges only that Kittelberger "dislike[d]" plaintiff, and told Root and another supervisor that she felt "hostile towards" plaintiff. (Dkt. #1-4 at ¶36, ¶66; Dkt. #1-4 Exhibits, March 30, 2017 NYSDHR charge, at ¶13).

These allegations do not plausibly describe a hostile work environment. Plaintiff does not identify any offensive, disparaging or insulting comments or interactions whatsoever, let alone a continuous or pervasive pattern of such incidents, which were motivated by or relating to plaintiff's race (or, more broadly, related to her membership in any protected class). She makes no allegation that any of Root's or Kittelberger's conduct, whatever it might have been, is attributable to the District.

While plaintiff does allege that Root gave her an unfair performance review, and that the District failed to thoroughly investigate plaintiff's internal discrimination claims, such allegations are "insufficient as a matter of law to state a hostile work environment claim." *Haggood v. Rubin & Rothman, LLC*, 2014 U.S. Dist. LEXIS 161674 at *48 (E.D.N.Y. 2014) (claims that employer reprimanded plaintiffs, failed to investigate their discrimination complaints, and engaged in excessive scrutiny, even if adequate to demonstrate disparate treatment, are insufficient to state a hostile work environment claim).

---

would move up in the position of Director for NorthSTAR." (Dkt. #1-1 Exhibits, March 30, 2017 NYSDHR charge, at ¶21). To the extent that plaintiff intended these allegations to state a claim for discriminatory or retaliatory failure to promote, plaintiff has failed to state such a claim, as she has not alleged that she was qualified to be, or ever applied to be (or alternatively, was precluded by defendants from applying to be), the Acting Director or Director of NorthSTAR. *See generally Grimes v. Sil*, 2020 U.S. Dist. LEXIS 54290 at *18 (E.D.N.Y. 2020) (to state a claim for discriminatory failure to promote, plaintiff must allege that she applied for a specific position and was rejected therefrom, and must sufficiently describe the duties of the position to permit the inference that she was qualified for it); *Gupta v. City of Bridgeport*, 2015 U.S. Dist. LEXIS 33907 at *21 (D. Conn. 2015)(same).

In short, plaintiff's hostile work environment claim is comprised solely of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which are insufficient to state a claim. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

## II.     Second Cause of Action: Age-Based Disparate Treatment

In order to state a prima facie claim of age-based discrimination in violation of the ADEA, a plaintiff must allege that: (1) she is a member of a protected class (e.g., over the age of forty); (2) her job performance was satisfactory; (3) she suffered adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination based on age. *See Grady v. Affiliated Cent., Inc*., 130 F.3d 553, 559 (2d Cir. 1997).

Here, plaintiff contends that she is over the age of forty and was performing her job as a CASE satisfactorily. She further asserts, in conclusory fashion, that certain younger employees (including a group of fifteen individuals identified by name, and some by racial background and age, with the latter identified as Caucasian and African-American men and women between the ages of thirty-four and thirty-six) were treated more "favorab[ly]" than she was by the District. (Dkt. #1-4 at ¶¶175-176).

These allegations, which do not specify in what ways the other employees were treated differently, explain how they were similarly-situated to plaintiff, or identify the adverse employment action to which plaintiff was subjected to which the others were not, are simply too vague to state a plausible claim of age-based discrimination. *See e.g.*, *Vaigasi v. Solow Mgmt. Corp.*, 2017 U.S. Dist. LEXIS 37338 at *15 (S.D.N.Y. 2017) (a vague assertion that an employee was "treated less well than [younger] individuals" is "legally insufficient" to state a claim for age-based discrimination); *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 514 (S.D.N.Y. 2010) ("vague claims of differential treatment alone do not suggest discrimination, unless those treated

differently are 'similarly situated in all material respects'") (quoting *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

As such, the proposed Complaint fails to state a claim for disparate treatment under the ADEA.

### III.   First and Second Causes of Action: Retaliation in Violation of Title VII and the ADEA

Plaintiff also alleges that the District's elimination of her CASE position was undertaken in retaliation for her engagement in protected activity.[3]

Generally, in order to state a claim of retaliation in violation of Title VII or the ADEA, a plaintiff must "give plausible support to the reduced prima facie requirements" of: (1) participation in protected activity; (2) the employer's awareness of that activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Febrianti v. Starwood Worldwide*, 2016 U.S. Dist. LEXIS 15285 at *9 (S.D.N.Y. 2016)(quoting *Littlejohn*, 795 F.3d 297 at 318)). *See also Ninying v. N.Y. City Fire Dep't*, 2020 U.S. App. LEXIS 12232 at *5 (2d Cir.2020) (unpublished opinion).

As in prior *Malcolm* litigation, the proposed Complaint focuses on the District's elimination of the probationary CASE positions, which effectively laid off the twenty-two persons in that position, including plaintiff. Plaintiff now makes the startling claim that the elimination of all twenty-two probationary CASE positions was the result of a vendetta directed solely toward her. Plaintiff asserts, without any supporting facts, that the District's asserted reason for

---

[3] Plaintiff also indicates in the proposed Complaint (Dkt #2 at ¶¶36-39), as she did in her March 30, 2017 NYSDHR charge, that she believes that the District retaliated against her for filing the December 26, 2016 internal complaint by declining to adequately investigate it. It is well-settled, however, that an employer's failure to investigate a discrimination complaint generally cannot be considered an adverse employment action taken in retaliation for the filing of *the same discrimination complaint*. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010).

eliminating the positions (budgetary concerns) was a mere pretext, and that the loss of 21 other persons' jobs was simply "collateral damage" from the District's attempt to retaliate against plaintiff for having complained about discrimination. This is pure conjecture. Plaintiff's narcissistic belief that all things revolve around her cannot support a viable cause of action for retaliation.

Plaintiff also alleges in the proposed Complaint that all of the other laid-off CASEs – except for her – were assisted to find other positions. (Dkt. #1-4 at ¶¶158-163). However, this Court has previously discussed this claim in *Malcolm I*, where the Court determined that plaintiff had been placed on a preferred eligibility list for recall, and was in fact recalled by the District in or around November 2017, and accepted a position with the same salary and benefits as her former probationary CASE position. *Malcolm I*, 388 F. Supp. 3d 242 at 250. Nor was the recall the District's first attempt to re-employ plaintiff: plaintiff concedes in her March 30, 2017 NYSDHR charge, which is attached to the proposed Complaint and explicitly incorporated therein, that soon after the probationary CASE layoffs were announced, the District offered plaintiff a contract for a full-time teaching position, which she refused because she considered it to be a demotion. (Dkt. #1-4 Exhibits, March 30, 2017 NYSDHR charge, at ¶¶34, 43, 47, 50).

The proposed Complaint thus alleges that plaintiff engaged in protected activity of which the District would have been aware (the filing of two internal discrimination complaints and an EEOC charge), and was subjected to an adverse employment action (the decision to lay off all persons in plaintiff's position). With respect to circumstances implying a causal connection, plaintiff relies solely upon the temporal proximity between her December 26, 2016 and March 3, 2017 internal discrimination complaints and her March 16, 2017 administrative charge, and the proposal and/or adoption of a 2017-2018 District budget that eliminated all probationary CASEs.

11

It is well settled that "[a]t the pleading stage, '[a] retaliatory purpose can be shown indirectly by timing: protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action.'" *Rivera v. JP Morgan Chase*, 2020 U.S. App. LEXIS 17114 at *6 (2d Cir. 2020) (unpublished opinion, vacating district court's dismissal of retaliatory termination claim where plaintiff's employment was terminated within 1-2 months of his engagement in protected activity)(quoting *Vega*, 801 F.3d 72 at 90).

Here, the Court's analysis of temporal proximity is complicated by the fact that the proposed Complaint does not identify precisely when, or by whom, the District budget proposing elimination of probationary CASEs for 2017-2018 was crafted, and when the Board of Education voted to adopt it. Plaintiff alleges only that the Superintendent presented the proposed budget to the Board of Education on or about March 21, 2017, and that she read a news article about it a day or two later. As such, it is entirely possible that some or all of plaintiff's protected activities either fall outside the 1-2 month window generally accepted in this Circuit for reliance on temporal proximity to support an inference of retaliation, or even that some of plaintiff's protected activity took place *after* the pertinent budgetary decisions had already been made.

Nonetheless, assuming *arguendo* that one or more of plaintiff's protected activities occurred during the requisite window of time, temporal proximity is the sole foundation upon plaintiff's claim that her layoff occurred under circumstances suggesting retaliation rests, and that foundation is irreparably compromised by plaintiff's other factual allegations.

First, the value of temporal proximity is diminished by the fact that school district staffing needs are evaluated annually from early spring (with the proposed budget for the 2017-2018 school year having been prepared on or before March 21, 2017, according to plaintiff), with adjustments

12

continuing throughout the summer and into the fall (when plaintiff was recalled), thus bringing most protected activities within the 2-month window, simply by coincidence. *See generally Ferrara v. Maturo*, 2019 U.S. Dist. LEXIS 144456 at *20 (D. Conn. 2019).

Second, the fact that plaintiff's position was eliminated – by her own account – as part of a layoff that included the more than twenty other individuals with plaintiff's same job title, none of whom were alleged to have engaged in protected activity, completely undercuts the plausibility of plaintiff's retaliation claim.

Finally, not only did the layoff apply to all probationary CASEs equally, but all of the affected employees (plaintiff included) were thereafter assisted by the District to find other positions, with plaintiff initially declining a full-time teaching position, and later accepting a recall position with the District in or around November 2017. *Malcolm III*, 18-CV-6450 (Dkt. #1 at ¶21). These allegations undermine any suggestion of a causal connection between plaintiff's protected activity and the elimination of the probationary CASE positions.

In short, the Court finds that while "temporal proximity, without more," may be sufficient to suggest an inference of discrimination for purposes of a claim for retaliatory termination, "temporal proximity, with less" – that is, vague allegations of potential temporal proximity, eroded by a plaintiff's own factual allegations that suggest coincidental timing, describe an adverse employment action which equally affected dozens of employees who didn't engage in protected activity, and indicate that plaintiff's employer subsequently made multiple attempts to reemploy her, and ultimately did re-hire her in a position with equal pay and benfits – is insufficient to "nudge [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Febrianti*, 2016 U.S. Dist. LEXIS 15285 at *15-*17 (dismissing retaliation claim as wholly conclusory where plaintiff points to no circumstantial

evidence of retaliation such as disparate treatment of employees who didn't engage in protected conduct, relies solely on temporal proximity, and sets forth "uniformly vague allegations about the events surrounding [her protected activity and the adverse employment action that followed, which] in no way suggest that the temporal proximity . . . is anything but coincidence").

The proposed Complaint thus fails to state a plausible claim of retaliatory termination.

### IV.    Fifth Cause of Action: Wrongful Termination in Violation of N.Y. Educ. Law

To the extent plaintiff claims that her termination also violated N.Y. Educ. Law §3020-a, that claim was previously dismissed in *Malcolm III*, because "this statute covers tenured teachers, and plaintiff, by her own admission, was [an untenured] probationary employee." *Malcolm III*, 389 F. Supp. 3d 189 at 198. Here, plaintiff again concedes that she was an untenured probationary CASE. (Dkt. #1-4 at ¶¶194-195). As such, and furthermore by operation of res judicata, plaintiff fails to state a claim for wrongful termination in violation of N.Y. Educ. Law §3020-a.

### V.    Fifth Cause of Action: Breach of Contract

Plaintiff's Fifth Cause of Action also alleges a breach of contract claim, arising from the alleged collective bargaining agreement between the District and plaintiff's union. This claim was previously dismissed in both *Malcolm II* and *Malcolm III* as insufficiently stated, based on the fact that the collective bargaining agreement "would not be covered by a breach of contract action," and plaintiff's failure to plead any contract, such as an employment contract, between herself and the District. *Malcolm II*, 388 F. Supp. 3d 257 at 264; *Malcolm III*, 389 F. Supp. 3d 189 at 198. It fails for the same reasons, and on the basis of res judicata, here.

**CONCLUSION**

For the reasons set forth above, the Court finds that plaintiff's proposed Complaint fails to state a claim against the defendants, and that granting leave to file to commence a new action would thus be futile.

Plaintiff's motion for leave to proceed with a new action against the defendants (Dkt. #1) is denied, and the Clerk is directed to close the case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 24, 2020.

15